**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-155-DLB**

**LUCIA DEL VALLE VASQUEZ-GONZALEZ**                          **PETITIONER**

**v.**                      **MEMORANDUM OPINION AND ORDER**

**JAMES DALEY, et al.**                                    **RESPONDENTS**

* * * * * * * * * * * * * * * *

## I.   INTRODUCTION

This matter is before the Court on Petitioner Lucia Del Valle Vasquez-Gonzalez's Petition for Writ of Habeas Corpus (Doc. # 1).   Respondents[1] having filed their Responses (Docs. # 5 and 6) and Petitioner having filed her Reply (Doc. # 7), the matter is now ripe for the Court's review.   For the following reasons, the Court will **grant** the Petition.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Lucia Del Valle Vasquez-Gonzalez is a native and citizen of Venezuela. (Doc. # 1 ¶ 25).   Vasquez entered the United States without inspection on April 18, 2023 near Brownsville, Texas.   (*Id.*).   At the time of this unauthorized entry, Vasquez was accompanied by her minor daughter.   (*Id.*).   Shortly after her entry, Customs and Border

---

[1]   Petitioner files this action against Samuel Olson, Field Office Director, Immigration and Customs Enforcement ("ICE"), Chicago Field Office; Todd M. Lyons, Acting Director of ICE; Markwayne Mullin, Secretary, U.S. Department of Homeland Security ("DHS"); Todd Blanche, Acting Attorney General of the United States (collectively, the "Federal Respondents); and James Daley, Warden, Campbell County Jail (collectively, with the Federal Respondents, "Respondents").   (See Doc. # 1 at 6-7).

1

Patrol ("CBP") officials detained Vasquez and her daughter.  (*Id.*).  Three days later, on April 21, 2023, Vasquez was served with a Notice to Appear before an immigration judge ("IJ") for removal proceedings.  (Doc. # 5-2 at 1).  That same day, CBP officials released Vasquez and her daughter into the United States on their own recognizance.  (Doc. # 1 ¶ 2).  Vasquez ultimately settled in Chicago, Illinois, where she resided with her daughter prior to her present detention.  (*Id.* ¶ 26).

Nearly three years after her initial entry, on March 10, 2026, Vasquez was arrested by ICE officials in Chicago.  (*Id.* ¶ 27).  At the time of her arrest, Vasquez was served with a Form I-200 "Warrant for Arrest of Alien," authorizing her apprehension and detention pursuant to 8 U.S.C. § 1226.  (Doc. # 5-3 at 1).  Subsequent to her arrest, Vasquez was transferred to the Campbell County Jail in Newport, Kentucky, where she remains detained.  (Doc. # 1 ¶ 27).  At no time during her detention did Vasquez receive a bond hearing, and, because of Respondents' detention policies, she has not been able to request one.  (*Id*. ¶ 30).

On April 9, 2026, Vasquez filed the instant Petition for Writ of Habeas Corpus.  (*Id.*).  The next day, the Court issued an order directing Respondents to respond to the Petition. (Doc. # 4).  Respondents Olson, Mullin, Blanche, and Lyons filed their Response on April 19, 2026.  (Doc. # 5).  Respondent Daley filed his Response on April 24, 2026. (Doc. # 6).  Vasquez filed her Reply, addressing both Responses, on May 5, 2026. Accordingly, this matter is ripe for the Court's review.

III.    ANALYSIS

Vasquez's Petition alleges that her present detention violates the Immigration and Nationality Act ("INA") and deprives her of her right to due process under the Fifth

Amendment. (Doc. # 1 ¶¶ 8-9). Specifically, she contends that she is entitled to immediate release or, alternatively, a bond hearing at which the Government is required to justify her detention as necessary by clear and convincing evidence. (*Id*. ¶ 85).

### A.    Proper Respondents

Before turning to Vasquez's substantive arguments, the Court will address Respondent James Daley's contention that he is not a suitable respondent. (Doc. # 6 at 8).

"[T]he federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over the petitioner.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). The Supreme Court has held that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447. Similarly, this Court has held that, where an immigration detainee files a petition for writ of habeas corpus, the jailer is a proper respondent. *M.T.B. v. Byers*, No. 2:24-cv-082-DCR, 2024 WL 3881843, at *1 (E.D. Ky. Aug. 20, 2024). Indeed, "as the person who has 'day-to-day control over the facility in which [Vasquez] is being detained,' [Daley] is [Vasquez's] custodian." *Id.* (quoting *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003)).

Vasquez is presently detained at the Campbell County Jail. (Doc. # 1 ¶ 1; Doc. # 6 at 2). Daley, as the elected Jailer, "oversee[s] and operate[s]" the Campbell County Jail. (Doc. # 6 at 1). Therefore, Daley is a proper respondent to Vasquez's Petition. *See*

3

*Padilla*, 542 U.S. at 447; *Byers*, 2024 WL 3881843, at *1. Accordingly, the Court will deny Daley's request to dismiss him as a respondent.[2]

Having concluded that Daley is a proper respondent, the Court turns to the substantive arguments Vasquez raises in her Petition.

**B.    Relevant Framework**

At its core, habeas provides "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And this relief is available to "every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A district court may grant a writ of habeas corpus to any person who shows that he is detained within the court's jurisdiction in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that habeas relief extends to noncitizens. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more.").

Enacted in 1952, the INA consolidated previous immigration and nationality laws and now contains "many of the most important provisions of immigration law." U.S. Citizenship and Immigration Services, Immigration and Nationality Act (July 10, 2019), https://www.uscis.gov/lawsandpolicy/legislation/immigrationandnationalityact#:~:text=Th

---

[2]    Importantly, the fact that Daley is *a* proper respondent to the Petition does not mean that he is the *only* proper respondent. In *Cerimovic v. Byers*, a court in this District explained that the Supreme Court's decision in *Padilla* "did not foreclose the possibility" of additional respondents. No. 2:24-cv-26, slip op. at 13 (E.D. Ky. May 8, 2024). Indeed, when faced with a habeas petition filed by an alien detainee, the *Cerimovic* Court held that the ICE Field Office Director was also a proper respondent. *Id.* at 15; *see also Delgado Vilchez v. Warden, North Lake Corr. Facility*, No. 1:26-cv-216, 2026 WL 570449, at *8 (W.D. Mich. Mar. 2, 2026) (finding that, in the case of a similarly situated petitioner, it was appropriate to name both the ICE Field Office Director and the jailer presiding over the petitioner's site of detention).

e%20Immigration%20and%20Nationality%20Act,the%20U.S.%20House%20of%20Rep resentatives.  Relevant to Vasquez's Petition, Congress has established two statutes, codified in Title 8, which govern detention of noncitizens pending removal proceedings— 8 U.S.C. §§ 1225 and 1226.

The first statute, 8 U.S.C. § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  It states, in pertinent part:

> **(b)     Inspection of applicants for admission**
>
> **(2)     Inspection of other aliens**
>
> **(A)     In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A).  Important to note, for purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).

The second provision at issue, 8 U.S.C. § 1226, is titled "Apprehension and detention of aliens" and reads:

> **(a) Arrest, detention, and release**
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1)     May continue to detain the arrested alien; and
>
> (2)     May release the alien on—

> (A)    Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a).

Section 1226(c) of the INA was amended by Congress in January 2025 with the enactment of the Laken Riley Act, which added a new subsection under Section 1226(c), requiring mandatory detention in certain circumstances.  Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025).  The amendment added a two-step process, in which the Attorney General must detain a noncitizen if

> (1) they are inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation and

> (2) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

*Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *3 (W.D. Ky. Sep. 19, 2025) (quoting U.S.C. §§ 1226(c)(1)(E)(i)-(ii)).

The distinction between 8 U.S.C. §§ 1225 and 1226 lies at the heart of Vasquez's Petition.  Pursuant to 8 U.S.C. § 1226(a), noncitizens who are arrested and detained have the right to request a bond hearing before an IJ.  Conversely, under 8 U.S.C. § 1225(b)(2)(A), all aliens deemed to be applicants for admission *must* be detained.  As noted *supra*, Vasquez, a noncitizen who has lived in the United States since 2023, has been detained by ICE and is being held at the Campbell County Jail.  The question, then, is whether Vasquez must be detained without a hearing under § 1225(b)(2), as

Respondents contend, or whether she has the right to request a meaningful bond hearing pursuant to § 1226.[3]

### C.    Statutory Interpretation

The Parties agree on the basic facts of this case.  (*See* Doc. # 5 at 2).  Rather, the central disagreement concerns which statutory provision applies to Vasquez.  Thus, the issue before the Court is one of statutory interpretation.  In interpreting statutes, district courts must "use every tool at their disposal to determine the best reading of the statute." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 400 (2024).  Statutes must be given their "ordinary, contemporary, common meaning" *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997), while also being read "in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012).

The Court first turns to the plain language of the statute.  The Court begins by looking at the first words one may read—the title.  A "[c]ourt gives each and every word meaning, and this includes the title." *Barrera*, 2025 WL 2690565, at *4.  While section headings are not dispositive, "they are instructive and provide the Court with the necessary assurance that it is at least applying the right part of the statute in a given circumstance." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025); *see also  Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a statute and the heading of a section

---

[3]    The Court notes that the matter before this Court is *not* whether the executive branch has the authority to direct ICE/DHS to detain and deport noncitizens.  The question before the Court is a narrower one, to wit, whether those noncitizens—specifically Petitioner Vasquez—are entitled to request a bond hearing before an IJ prior to their removal hearing pursuant to 8 U.S.C. § 1226(a) or must be mandatorily detained pursuant to 8 U.S.C. § 1125(b)(2)(A).

are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotations and citations omitted).

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for a hearing[.]"  Section 1226 is titled "apprehension and detention of aliens" with a focus on "arrest, detention, and release[.]"  Thus, the text of the titles indicate that § 1225 governs "arriving" noncitizens who are *presently* "seeking admission" into the United States,[4] while § 1226 focuses on the apprehension and detention of those noncitizens already present in the country.  *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *7 (W.D. Ky. Nov. 27, 2025) ("The added word of 'arriving' supports the notion that the statute governs 'arriving' noncitizens, not those present already.").

Section 1225(a)(1) states that an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States."  Pursuant to § 1225(b)(2)(A), any applicant for admission who is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted" must be detained.  The analysis then, is twofold.  For a noncitizen to be mandatorily detained under § 1225(b)(2)(A), they must be an applicant for admission who is also seeking admission.  Other district courts have acknowledged that this "question is puzzling at first blush. How can an 'applicant for admission' not 'seek admission?'"  *J.G.O. v. Francis*, No. 25-cv-7233, 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025).  However, this question is answered by looking to the statutory definition.  To be an applicant for admission, "[a]ll that's needed is presence

---

[4]    This is supported by the text of § 1225, which focuses on limited and specific methods of entry, for example, via "crewman" or "stowaways," leading to the conclusion that "Section 1225 is much more limited in scope than the United States asserts."  *Barrera*, 2025 WL 2690565, at *4.

8

without admission—in other words, it applies to the great number of undocumented immigrants who currently live here." *Id*. By contrast, seeking admission "might mean something more than that—some active desire or process toward admission." *Id*. One's *status* as an "applicant for admission" under the definitional language of § 1225(a)(1) is distinct from the *act* of "applying for" or "seeking" admission.

Congress provided a clear definition of aliens who are "applicants for admission." 8 U.S.C. § 1225(a)(1). And this definition turns on an individual's physical presence in the United States. *Id.*; *see also Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("[I]t is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.'") (quoting 8 U.S.C. § 1225(a)(1)). Thus, an alien present in the United States can qualify as an "applicant for admission" under § 1225 without also "seeking admission" by necessity. *See Castañon-Nava*, 161 F. 4th at 1061 (noting that Congress "could easily have included noncitizens who are 'seeking admission' within that definition but elected not to do so"). Because Vasquez is neither an "arriving alien" nor "seeking admission" into the United States, the mandatory detention provisions contained § 1225(b)(2) do not apply to her.

The Federal Respondents disagree with this reading. They take the position that for a noncitizen to qualify as an "applicant for admission" who is "seeking admission" she must merely be (1) present in the United States, and (2) not be legally admitted by an immigration officer. (Doc. # 5 at 4). Thus, the Federal Respondents contend that despite Vasquez's continued residence in the United States for more than three years she is still

9

"seeking admission" because "an 'applicant for admission' is necessarily 'seeking admission.'" (Doc. # 5-4 at 2-3).[5] The Federal Respondents' interpretation of § 1225(b)(2)(A), therefore, calls for mandatory detention of *every* noncitizen present in the United States who has not been lawfully admitted. The Court finds this interpretation much too broad. *See Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("[A]ccepting Respondents' one-size-fits-all application of 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction.").

In reaching this conclusion, the Federal Respondents misconstrue, or ignore entirely, the word "seeking" in the phrase "seeking admission." They argue that a noncitizen who is merely present in the United States is necessarily also seeking admission. (Doc. # 5-4 at 2-3). But the use of the present progressive term "seeking" "implies action." *Barrera*, 2025 WL 2690565 at *4; *see also Diaz v. Marinez,* 792 F. Supp. 3d. 211, 218 (D. Mass. 2025) ("[T]he phrase 'seeking admission[,]' [though] undefined in the statute[,] [] necessarily implies some sort of present-tense action."); *Edahi*, 2025 WL 3466682 at *8 ("Seeking means 'to go in search of' and is synonymous with 'pursue.'" (quoting Webster's Dictionary (11th ed. 2024))).

Furthermore, the INA defines the term "admission" as "the lawful *entry* of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Given that the word "entry" is left undefined by the INA, courts interpret it according to its "ordinary, contemporary, common meaning."

---

[5] In their Response (Doc. # 5), the Federal Respondents incorporate by reference the legal arguments from the appellate brief the government filed with the Sixth Circuit Court of Appeals in *Lopez-Campos v. Raycraft*, 25-1965. (*See* Doc. # 5-4). When referencing this document, the Court will cite the brief's internal pagination.

*Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotations omitted); *see also Gustafson v. Alloyed Co., Inc.*, 513 U.S. 561, 585 (1995) (Thomas, J., dissenting) ("The canon that we construe a statutory term in accordance with its ordinary or natural meaning applies only in the absence of a statutory definition." (cleaned up)). "That meaning is 'entering into . . . (a country),' which is '[t]o come or go in.'" *J.G.O.*, 2025 WL 3040142, at *3 (quoting *Entry*, OXFORD ENGLISH DICTIONARY (2d ed. 1989); *Enter*, OXFORD ENGLISH DICTIONARY (2d ed. 1989)).

Thus, it cannot be said that Vasquez, a noncitizen who has resided in the United States for more than three years is "actively seeking admission." *See J.G.O.*, 2025 WL 3040142, at *3 ("'[S]eeking admission' requires an alien to continue to want to go into the country. The problem . . . is that [the petitioner] is already here; you can't go into a place where you already are."). Furthermore, seeking lawful status or relief from removal is not the same as "seeking admission." *See Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021) (observing that "[l]awful status and admission . . . are distinct concepts in immigration law: Establishing one does not necessarily establish the other"). Thus, a noncitizen present in the United States may seek lawful status without simultaneously seeking admission. *Id.* (noting that a noncitizen who received Temporary Protected Status was not therefore constructively admitted to the United States).

Numerous district courts, including the undersigned Judge in multiple prior Orders, have come to the same conclusion. *See Barrera*, 2025 WL 2690565, at *4 ("Noncitizens who are present in the country for years, like [petitioner] who has been here 20 years, are not actively 'seeking admission.'"); *Lopez-Campos*, 2025 WL 2496379, at *7 ("There is no logical interpretation that would find that Lopez-Campos was actively 'seeking

11

admission' after having resided here, albeit unlawfully, for twenty-six years."); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025) ("In agreement with other district courts, this court rejects Respondents' expanded reading of 1225(b)(2) and the term "seeking admission.").   Likewise, the Seventh and Second Circuits have agreed with this reading.  *Castañon-Nava*, 161 F.4th at 1061 ("[p]ut another way, 'U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)'") (emphasis in original) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)); *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044, at *9 (2d. Cir. Apr. 28, 2026) ("Nor did Congress intend to mandate detention of noncitizens who are 'applicants for admission' but not 'seeking admission,' such as illegal entrants, like Petitioner who have nonetheless lived in the United States for a substantial time.").  To adopt the Federal Respondents' interpretation of § 1225(b)(2)(A) would render the phrase "seeking admission" "mere surplusage by equating it to 'applicant for admission.'"  *Ochoa Ochoa*, 2025 WL 2938779, at *6; *see also Castañon-Nava*, 161 F.4th at 1061 (noting that such a construction "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction"); *J.G.O.*, 2025 WL 3040142, at *3 ("[T]his is just another example of the government's construction inviting surplusage into the statute. That Congress chose to include this additional phrase—'seeking admission' . . . suggests that it must

mean something distinct.").  The Court declines to adopt such an expansive reading of § 1225(b)(2)(A).[6]

The Court now turns to the plain language of § 1226, which controls the "apprehension and detention of aliens."  Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" remains in detention "pending a decision on whether the alien is to be removed from the United States."  The plain meaning of the statute is clear and applicable to Vasquez—an alien who was arrested and remains detained by ICE pending removal proceedings. (Doc. # 1 ¶¶ 1, 29).  This is further bolstered by the record.

That § 1225(b)(2)(A) applies to noncitizens seeking admission into the United States while § 1226 applies to those noncitizens who are already present in the United States comports with the broader structure and context of our immigration law.  *Castañon-Nava*, 161 F.4th at 1061-62.  Indeed, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (noting that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, *irrespective of its legality*") (emphasis added).

Another important indication that Vasquez's detention is governed by § 1226 comes from DHS itself.  When Petitioner was detained on March 10, 2026, DHS served

---

[6]     The Court notes that in their Response, the Federal Respondents repeatedly reference *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), an opinion from the Board of Immigration Appeals.  Pursuant to the Supreme Court's decision in *Loper Bright*, courts "need not defer to any agency interpretation of law just because a statute is ambiguous."  603 U.S. at 412-413.

her with an I-200 arrest warrant pursuant to 8 U.S.C. § 1226.  (Doc. # 5-3).  Thus, when DHS initially detained Vasquez in Chicago, it did so under the auspices of § 1226.  This supports this Court's conclusion and reaffirms the Supreme Court's determination in *Jennings v. Rodriguez,* that § 1226(a) applies to aliens already present in the United States, while § 1225(b)(2)(A) applies to arriving aliens.   583 U.S. at 298, 303.  Respondent's new post hoc position is simply "impermissible."  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22 (2020) (holding that "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations").

Most compelling for this Court is the addition of the Laken Riley Act, signed into law in January 2025.  The Laken Riley Act, which was incorporated into § 1226(c), provides that noncitizens who have been charged with, convicted of, or admitted to committing various listed crimes, are subject to mandatory detention.  8 U.S.C. § 1226(c).  If, as the Federal Respondents argue, Congress had intended for § 1225 to govern all noncitizens who are present in the country, regardless of when or where they were detained, then why did Congress even bother passing that legislation?  If the Federal Respondents' reading of § 1225 is correct, then the addition of the Laken Riley Act would be superfluous.  The Laken Riley Act added a mandatory detention requirement, "in an otherwise discretionary Section."  *Barrera*, 2025 WL 2690565, at *4.   As other courts have noted,

> [i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless and this Court, too, 'will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).

14

*Lopez-Campos*, 2025 WL 2496379, at *8 (quoting *Maldonado*, 2025 WL 237441, at *12); *see also id*. ("Respondents' interpretation of the statutes would render [the Laken Riley Act] superfluous); *Ariza v. Noem*, No. 4:25-cv-165-RGJ, 2025 WL 3722014, at *6 (W.D. Ky. Dec. 23, 2025) ("If Section 1225(b)(2)(A) governed certain noncitizens as the United States claims it does, the Laken Riley Act would have been redundant and unnecessary."); *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) ("Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected."); *Martinez*, 792 F. Supp. 3d. at 221 ("[I]f, as the Government argue[s] ... a non-citizen's inadmissibility were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 amendment would have no effect. This is a presumptively dubious result."); *Selvin Adonay E.M. v. Noem et al*, No. 25-cv-3975, 2025 WL 3157839, at *6 (D. Minn. Nov. 12, 2025) ("the presumption against superfluity is at its strongest because the Court is interpreting two parts of the same statutory scheme, and Congress even amended the statutory scheme this year when it passed the Laken Riley Act.").  This Court agrees with its sister courts.

The Federal Respondents fail to elaborate when, if § 1225(b)(2) applies to *every single* noncitizen's detention proceeding, § 1226 would ever, if at all, come into play.[7] The Court finds it difficult to conceive of a situation in which Congress would enact an insignificant superfluous statute for no other reason than to add words to the page.  *See*

---

[7]   Respondents make various public policy arguments on why noncitizens who have entered the country without detection should not be treated more favorably than those who entered lawfully.  (Doc. # 5-4 at 43-44).  While valid arguments, the text, as clearly indicated above, "does not currently reflect such public policy considerations."  *Maldonado*, 2025 WL 2374411, at *12. "Rather, such arguments may be made to Congress if Respondents would like to amend or repeal § 1225 or § 1226, but such policy arguments are not reflected in the Laken Riley Act amendment … passed only a few months ago."  *Id*.

*Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

The Court acknowledges that the Federal Respondents cite a string of nonbinding district court decisions supporting its interpretation. For example, the Federal Respondents cite *Mejia Olalde v. Noem et al.*, a case from the Eastern District of Missouri. (Doc. # 5-4 at 23). There, the court agreed with the government's interpretation of § 1225(b)(2)(A), concluding that the petitioner was an applicant for admission because he was present in the United States and had not been legally admitted. No. 1:25-cv-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025). In its analysis, the court looked not towards whether the petitioner was "seeking admission" but whether he was an "applicant for admission." *Id*. at *2. Its reasoning rested in part on the conclusion that it "makes no sense to describe an active applicant for admission as somebody who is not 'seeking' admission." *Id*. at *3. Yet, as the Court discussed above, "to be detained pursuant to Section 1225(b)(2)(A), that is *precisely* what the text requires." *Edahi*, 2025 WL 3466682, at *12. "Holding as *Olalde* does would require the Court to ignore the plain statutory text. But Courts must give effect to every word in the statute. . . In ignoring the very words of section 1225(b)(2)(A) *Olalde* defies this principle." *Id*.

The Federal Respondents also cite *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025). (Doc. # 5-4 at 23). However, the Court is no more persuaded by this decision. Specifically, the Court is unconvinced because *Rojas* did not

16

conclude that the recent addition of the Laken Riley Act would be rendered superfluous if § 1225(b)(2)(A) required mandatory detention of all noncitizens.  *See Rojas*, 2025 WL 3033967, at *9 ("[L]egislation passed in 2025 has little bearing on the meaning of legislation enacted in 1996.  Indeed, nothing in the Laken Riley Act suggests any Congressional thoughts concerning the issues presented in this case.").  This Court, and many others, disagree with that interpretation.  *See Edahi*, 2025 WL 3466682, at *11 ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect. . . *Rojas*' reading of the Laken Riley Act underscores this very premise.") (internal quotations omitted).

Finally, pertinent legislative and enforcement history reinforces the Court's conclusion.  *See Loper Bright,* 603 U.S. at 386 ("[T]he longstanding practice of the Government—like any other interpretive aid—can inform [a court's] determination of what the law is.").  Enacted in 1952, the INA "distinguished between aliens physically arriving in the United States and those who had entered the Country."  Library of Congress, *Immigration Detention: A Legal Overview* (Sep. 16, 2019), https://www.congress.gov/crs-product/R45915#_Ref17891326.  In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which focused on whether the noncitizen "had been lawfully admitted into the country by immigration authorities."  *Id*.  Since the IIRIRA's enactment "the statutory framework governing detention has largely remained constant."  *Id*.  In applying the INA to detention proceedings, the Government has, for the past thirty years, consistently applied § 1226(a).

It was not until July of 2025 when DHS/ICE announced a new policy, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" where it deemed

17

all persons who entered the United States without inspection "applicants for admission" under § 1225, that the Government changed course.   U.S. Customs and Border Protection, *Detention of Applicants for Admission*, (Sep. 18, 2025) https://www.cbp.gov/document/foia-record/detention-applicants-admission; *see also Lopez-Campos*, 2025 WL 2496379 at *5 ("For the past 30 years, the Government has applied Section 1226(a)[.]" It is only "now that . . . they want the Court to declare that the application of Section 1226(a) is incorrect.").   This sudden change contradicted the long-established understanding that § 1225(b) "applies primarily to aliens seeking entry into the United States" while § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 298, 303; *see also id*. at 288 ("Section 1226(a) sets out the default rule for those aliens [already present in the United States.]").   Thus, the enforcement history reflects a longstanding practice of applying § 1226(a) to noncitizens already residing in the country, which is "powerful evidence that interpreting [the INA] in that way is natural and reasonable[.]"  *Abramski v. U.S.*, 573 U.S. 169, 202-203 (2014) (Scalia, J., dissenting).

"The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework … for noncitizens who are already in the country and facing removal." *Lopez-Campos*, 2025 WL 2496397, at *5.  Therefore, the Court finds that Vasquez is not subject to § 1225(b)(2)(A).  Rather, the facts of the case make clear that her detention is governed by § 1226(a).[8]

---

[8] The Court acknowledges that the Circuit Courts have split over this issue.  The Fifth and Eighth Circuits have reached the opposite conclusion to this Court.  *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026); *Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026).  On the other hand, the Second Circuit has held that individuals

### D.      Due Process

Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply to Vasquez, the Court must now determine whether her present detention violates her due process rights.   The Federal Respondents contend that Vasquez is not entitled to any more detention than Congress has authorized.  (Doc. # 5 at 6-7).   And because the Federal Respondents insist that her detention is mandatory under § 1225(b)(2)(A), they conclude that Vasquez is receiving all the process she is due. (*Id.* at 7).   However, as discussed above, Vasquez's detention is governed by § 1226(a).

The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]"   U.S. Const. amend. V.   The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))).   To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test to weigh

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used,

---

like Petitioner are entitled to a bond hearing under § 1226.  *Cunha*, 2026 WL 1146044.  And the Seventh Circuit has reached the same conclusion—albeit in a different procedural context.  *See Buenrostro*, 2026 WL 323330, at *4 n. 8 (recognizing the Seventh Circuit's conflicting decision in *Castañon*-Nava, 161 F.4th at 1048).  However, these decisions provide, at most, persuasive authority.  *See Wright v. Spaulding*, 939 F.3d 695, 699 (6th Cir. 2019) (noting that holdings of other circuit courts of appeals do not bind courts in the Sixth Circuit).   The Sixth Circuit is poised to take up the statutory interpretation issue raised by Petitioner in *Lopez-Campos v. Raycraft*, Case No. 25-1965 (6th Cir. Oct. 27, 2025).  Indeed, the Sixth Circuit held oral arguments in *Lopez-Campos* on March 18, 2026 pursuant to an expedited schedule.  *See* Doc. # 42, No. 25-1965.  In the absence of an authoritative decision from the Sixth Circuit Court of Appeals, the Court respectfully declines to adopt the Fifth Circuit's holding in *Buenrostro-Mendez* or the Eighth Circuit's holding in *Avila*.

and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Vasquez has a cognizable liberty interest in avoiding detention. *See Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]"). Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."). Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Further, the Supreme Court has previously required individualized hearings for deprivations of interests less fundamental than Vasquez's interest in freedom from detention. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

Second, the risk of erroneous deprivation of that interest is high if Vasquez is not afforded a detention hearing. *See Edahi*, 2025 WL 3466682, at *14 (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest") (citation omitted); *Yao v. Almodovar*, No. 25 Civ. 9983 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (finding that ICE's "discretion-free detention of [the petitioner] abridged his rights under [8 U.S.C.] § 1226

20

and violated due process") (citations omitted).  To date, Vasquez has not had a detention hearing at which her eligibility for bond is determined on the merits of her individual circumstances.  Thus, Vasquez's present detention creates a high risk of an erroneous deprivation of her liberty interest.  Accordingly, the second *Mathews* factor favors Petitioner.

As to the third factor, Respondents have not put forth any argument whatsoever advocating for the United States' interest.  The Court, on its own, concludes that the United States likely has a strong interest in immigration proceedings, but certainly, the "existing statutory and regulatory safeguards" which this Court discussed at length about above, "serve the governmental interest in public safety." *Barrera*, 2025 WL 2690565, at *7 (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)).  Accordingly, all three factors weigh in favor of Vasquez.

Vasquez claims that immediate release is the most appropriate remedy in this case.  This Court agrees with Petitioner that her Fifth Amendment due process rights were violated when she was detained without access to an individualized hearing.  However, the Court disagrees that immediate release is the proper remedy.  Rather, this Court agrees with other district courts in the country which have concluded that the proper remedy to this violation is a constitutionally adequate bond hearing in which the government bears the burden of proof by clear and convincing evidence. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) ("[T]he government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)"); *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2nd Cir. 2020) (finding that the "district court correctly ordered a new bond hearing where the

Government bore the burden of proof"); *Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026) ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying [the petitioner's] continued detention"); *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87-88 (W.D.N.Y. Oct. 29, 2019) ("The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks '[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the [Government]'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))).

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)    Vasquez's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)    Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide her with a **constitutionally adequate bond hearing where the government bears the burden of proof by clear and convincing evidence** under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order**; and

(3)    Respondent shall file a Status Report with this Court **on or before May 20, 2026** to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 6th day of May, 2026.



Signed By:

*David L. Bunning*

**Chief United States District Judge**